UNITED STATES v. MINOR et al.

(District Court, W. D. North Carolina. June 20, 1917.)

COURTS ☞262(2)—FEDERAL COURTS—EQUITY JURISDICTION—REMEDY AT LAW.
  Rev. St. § 967 (Comp. St. 1916, § 1608), provides that judgments of the Circuit or District Courts shall cease to be liens on real estate in the same manner and at like periods as judgments of the state courts. The United States recovered judgment against a debtor, and after the time when state court judgments would have ceased to be liens it brought a suit to sell, for the satisfaction of such judgments, lands which had descended to the debtor's heirs and been sold to a third party in a partition suit. *Held* that, the Circuit Court of Appeals having decided that section 967 does not apply to judgments in favor of the United States, the suit could not be maintained, as the government had a complete and adequate remedy by the issuance of fi. fa. or execution, and the heirs and the purchaser could be brought in upon a mere motion or citation to show cause.

In Equity. Suit by the United States against J. B. Minor, administrator of C. O. Ward, deceased, and others. On application for decree. Bill dismissed.

W. C. Hammer, U. S. Atty., of Asheboro, N. C., and Clyde R. Hoey, Asst. U. S. Atty., of Shelby, N. C.

G. S. Bradshaw, of Greensboro, N. C., for defendants.

BOYD, District Judge. This is a bill in equity filed by the United States, praying that a certain tract of land, which had formerly belonged to C. O. Ward, deceased, be sold to pay the amount due upon several judgments, which were rendered in the Circuit Court of the United States at Greensboro. The facts in the case are stated in substance in the opinion of the Circuit Court of Appeals, Fourth Circuit, in this case at May term, 1916, the opinion being reported in 235 Fed. 101, 148 C. C. A. 595, but in order to present the views of this court in the present hearing it is deemed better to restate the facts more in detail.

The judgments claimed by the United States were obtained in actions at law, one at October term, 1885, for $225, on the distiller's

bond of Joseph A. Davis, for internal revenue taxes assessed against him, on which bond C. O. Ward was one of the sureties; also judgment rendered at October term, 1881, at Greensboro, for $67.57, internal revenue taxes assessed against said Davis as a distiller, C. O. Ward also surety upon the bond which covered this tax; at the same term another judgment was rendered against the same parties on a bond of like charatcer and for a like cause of action for $64.19; at April term, 1884, of the said court at Greensboro, a judgment was rendered against said Davis and his sureties on his distiller's bond, among whom was C. O. Ward, for $18, for internal revenue taxes assessed against said Davis; at the same term another judgment was rendered against the same parties for a like cause of action for $20.70; at October term, 1885, a judgment was rendered against the same parties on the distiller's bond of Davis for taxes assessed for $33.85. These judgments all carried with them interest and cost, were docketed in said court at Greensboro, and remained unsatisfied, and are still, as far as appears of record, unpaid, except the sum of $37.97, credited on the judgment for $67.57. Writs of fieri facias were issued upon these several judgments from the Circuit Court of the United States, and levies were returned upon them as follows:

Judgment for $64.19, fi. fa. issued October 18, 1881, levied upon the lands of J. A. Davis and S. T. Barber.

Judgment for $67.57, fi. fa. issued October 18, 1881, levied upon the lands of J. A. Davis and S. T. Barber, paid into clerk's office the sum of $37.97.

Judgment for $18, fi. fa. issued June 2, 1884.

Judgment for $225, fi. fa. issued October 24, 1885.

Judgment for $33.85, fi. fa. issued October 24, 1885.

Judgment for $20.70, fi. fa. issued June 2, 1884.

The return upon each of the four last was "nulla bona." No further writs of fi. fa. or execution were issued upon any of said judgments until January 25, 1912, when at the instance of the United States attorney executions were issued upon the said judgments and returned by the marshal: "Not executed; nothing found subject to execution. Defendants dead." On June 20, 1913, the United States attorney procured transcripts from the District Court of the United States for the Western District of North Carolina, at Greensboro, of the said several judgments and caused them to be docketed in the superior court of Guilford county, N. C. Theretofore, on March 26, 1912, at the instance of the United States attorney, J. B. Minor took out letters of administration upon the estate of C. O. Ward; C. O. Ward having died intestate and without issue in November, 1900, leaving as his own heirs at law the defendants in the present case, to wit, M. J. Wrenn, John R. Ward, Andrew L. Ward, Emma Ward, Belle Bratton, Josephine Hearst, Marshal Hiatte, and Frank Hiatte. There was no administration granted until the letters issued to Minor as above stated. On October 27, 1909, the heirs at law of Ward filed their petition in the superior court of Guilford county, alleging their ownership as tenants in common of the tract of land described in the petition filed in this case, and further alleging that on account of the number of tenants and the character and quantity of the land it was in-

capable of actual partition, and they prayed for a sale of the land in order that partition might be had. An order of sale was granted on November 15, 1909, a commissioner appointed, the sale advertised and made on May 2, 1910, at the courthouse door in Guilford county, when and where M. J. Wrenn became the last and highest bidder, for the sum of $2,018. Upon a report of said commissioner, the sale was confirmed, and under a further decree of the court a deed therefor made to the purchaser, Wrenn, shortly thereafter.

On February 8, 1913, the United States attorney for this district filed the present bill in equity, setting forth the facts herein stated, though not to the same extent in detail, and praying that the land, which had descended from Ward to his heirs, and which was owned by Ward at the time of his death, and upon which these judgments were claimed to be a lien, be sold to satisfy the said judgments. The court here, upon the facts, was of the opinion that the law of North Carolina which rendered a judgment absolutely void after a lapse of 10 years applied, and this was in view of the fact that such was the law of the state of North Carolina by statute, and the further fact that the Congress of the United States had before these judgments were obtained enacted section 967, R. S. U. S. 1878, Second Edition (Comp. St. 1916, § 1608), which is in the following language:

"Judgments and decrees rendered in a Circuit or District Court, within any state, shall cease to be liens on real estate or chattels real, in the same manner and at like periods as judgments and decrees of the courts of such state cease, by law, to be liens thereon."

And it was further the view of this court that the United States, having come into a court in North Carolina and prosecuted its claim, was bound by the procedure which had been established by law as the practice of the courts, and, although the United States attorney insisted on the previous hearing of this case that the limit of time did not affect the right of the United States to proceed to collect its judgments, that view was discarded by the court here on the ground that although laches could not be imputed to the United States, nor was it bound by the statute of limitations, yet that the question of limitations was not involved; that the North Carolina statute with reference to the liens of judgments on realty was a rule of property, and that the lien procured by a judgment ceased to exist at the end of 10 years after the judgment was entered and docketed, because it became void. This court was further of the opinion that to hold that this local law did not govern a judgment in favor of the United States would be simply to keep alive such a judgment for all time, for, if it had life beyond the period prescribed by the state law, then its vitality would be without limit. If such was the law, unsatisfied judgments in favor of the United States would no doubt in many instances embarrass the title, the sale, purchase, and transfer of real property for an indefinite period.

However, the Circuit Court of Appeals was of a different opinion, and upon an appeal in this case reversed the decree which had been entered by this court refusing the prayer of the bill of the United

States, basing its decision upon the opinion which the court entertained that the section above cited did not apply to the United States, and further that the statute of limitations could not be successfully pleaded against the United States. In this situation the case has come on for rehearing, and the United States attorney, without the introduction of any further testimony, has upon the facts shown by the record and those admitted presented a decree to the court for its signature, directing a sale of the tract of land involved by the United States marshal to satisfy the judgments.

The court, with due respect to the decision of the Circuit Court of Appeals, has declined to sign the decree presented, not that the court here has in mind any purpose to evade or to override the decision of the Circuit Court of Appeals, but adopting the opinion of the Circuit Court of Appeals as the law of the case, as the court here construes it, the decision is to the effect that the judgments involved were not void at the end of 10 years, but were still living and susceptible of being enforced by the ordinary process of fi. fa. or execution. In other words, as this court understands, a fi. fa. or execution could have issued upon each of the judgments, authorizing the sale of the land which was alleged to be subject to the lien. It may or may not have been necessary, in order to issue the fi. fa. or execution, to have made the heirs at law of Ward parties, and also the purchaser of the land at the partition sale; but this could have been done upon a mere motion or citation to appear and show cause why process in the execution of the judgments should not be issued.

Therefore it is the opinion of this court now that under these circumstances, and in view of these facts, a bill in equity was not the proper remedy. These were judgments at law, and the United States had a complete and adequate remedy to carry them into effect by a proceeding in the law case. There was no defect in the law regulating the procedure to secure the rights of the United States which needed to be supplied by a court of equity, nor was there any absence of the right to issue process in the law case which required the aid of a court of equity to secure enforcement. On these grounds the court feels constrained to dismiss the bill. It may be said that this bill had the effect of bringing the heirs at law of Ward and also the purchaser of the land into court. Although that is true, the complainant in the bill sought relief in a court of chancery, when, as has been stated, he had his full remedy at law. Bills in equity are not upheld under such conditions.

A decree will therefore be entered, dismissing the bill in this case.